■ In the Matter of ALFREDO HH., a Child Alleged to be Permanently Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; VALERIE HH., Appellant. — Yesawich, Jr., J. Appeal from an order of the Family Court of Schenectady County (Severson, J.), entered January 12, 1983, which adjudicated Alfredo HH. to be a permanently neglected child and directed his placement with petitioner for the purpose of adoption.

The day after respondent gave birth to her son Alfredo on May 3, 1979, petitioner obtained a temporary order removing the child to its custody and foster care. Thereafter, petitioner filed a neglect petition and, following a fact-finding hearing thereon, Family Court concluded that the developmental disabilities of respondent, who is mentally retarded, and her husband rendered them incapable of providing adequate care for their child. This court, in affirming the order placing the child in petitioner's custody for 18 months, rejected the parents' contention that a finding of neglect was constitutionally impermissible in the absence of a showing that they had ever been given an opportunity to care for him (*see, Matter of Alfredo HH.,* 84 AD2d 860). Before expiration of the 18-month order of custody, petitioner filed a permanent neglect petition against the child's parents. Following a 10-day hearing, Family Court determined, insofar as is relevant to this appeal by the mother, that petitioner established by clear and convincing evidence respondent's failure to plan and mental retardation, and after a dispositional hearing ordered that guardianship and custody of the child be transferred to petitioner.

Essentially, respondent maintains that because termination of parental rights is a far more onerous penalty than the temporary removal of the child which resulted from the earlier neglect petition, due process mandates that before her rights to the child can be permanently severed, there must be a factual showing, on an experimental basis, that she is incapable of providing minimum every day care for the child.

We find no infringement of respondent's due process rights; not only did she receive timely notice of the petition to declare Alfredo a permanently neglected child, but she was afforded the opportunity to be heard at a plenary hearing at which her counsel was permitted both to confront adverse witnesses and to present witnesses on her behalf.

To the extent germane here, Social Services Law § 384-b (7) (a) defines a permanently neglected child as: "a child who is *in the care of an authorized agency* and whose parent * * * has failed for a period of more than one year following the date such child came into the care of an unauthorized agency substantially and continuously or repeatedly to * * * plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (emphasis supplied). The statute does not condition an adjudication of permanent neglect pursuant to Social Services Law § 384-b (4) (d) on the parents first being accorded an opportunity to actually demonstrate their capacity to furnish day-to-day care for their child; it does, however, expressly presuppose that the child is in the care of an authorized agency. Since a child may only be found to be permanently neglected if it is in the agency's care and the child may be placed there without first having been in the parents' care (*Matter of Alfredo HH., supra*), and as it is the adequacy of the parents' behavior subsequent to agency intervention which is relevant in deciding whether a child is permanently neglected, that determination can properly be reached without the child ever having been in the parents' custody.

A reading of the record discloses that Family Court's decision is supported by clear and convincing evidence. Failure to plan for a child's future can justify termination of the parents' rights through a permanent neglect petition (*see,* Social Services Law § 384-b [4] [d]; *Matter of Nicole TT.,* 109 AD2d 919). Although respondent maintained continual contact with her child, for over three years she refused to avail herself of the financial and parental counseling opportunities assiduously arranged and encouraged by petitioner. Moreover, not only is there ample evidence that respondent neglected to plan for the child's future,

but her frequent changes of residence and vacillating and subservient relationships with men indicate an unwillingness or inability to furnish a stable home for her son.

The evidence with regard to respondent's mental retardation is equally compelling. A psychologist and a psychiatrist testified on petitioner's behalf that respondent had the intellectual capability of an 8½-year-old child and possessed an IQ in the mentally deficient range, and that the child would risk impaired development if he was returned to the mother. Respondent's own expert, a psychiatrist, classified her as mentally retarded, noted she would require the assistance of community-based services to enable her to provide even a minimum degree of care for the child, and observed further that if the interaction between her and these various social services (which she had refused to utilize in the past) became a stressful experience for her, the child's total well-being could be jeopardized.

Order affirmed, without costs. Kane, J. P., Weiss, Mikoll and Yesawich, Jr., JJ., concur.